UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ESTATE OF RONNY O. THORNTON, DECEASED, ET AL.                    PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:13CV620 DPJ-FKB

RANKIN COUNTY, MISSISSIPPI                                        DEFENDANT

ORDER

This civil-rights case is before the Court on Defendant Rankin County, Mississippi's Motion for Summary Judgment [40]. The parties have fully briefed the issues, and because Plaintiffs have not established a basis for municipal liability against the County, Defendant's motion should be granted.

I.  Background

In September 2010, Ronny O. Thornton was incarcerated at the Rankin County Detention Facility in Brandon, Mississippi. Tragically, he died the following month on October 6, 2010. His estate now brings this action under 42 U.S.C. § 1983, claiming Rankin County violated Thornton's Fourth and Fourteenth Amendment rights by applying excessive force, ignoring his medical needs, and violating his due-process rights. Rankin County also perceived state-law claims in the Complaint, but Plaintiffs have confirmed that no such claims were pleaded. The matter is now before the Court on Defendant's fully briefed motion for summary judgment. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II. Standards

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party

is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).[1]

---

[1] It should be noted that Plaintiffs' response fails to comply with Rule 56(c). First, as the non-movants, Plaintiffs were required to "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Instead, Plaintiffs merely list three exhibits in their memorandum without explaining what those exhibits say or how they support Plaintiffs' claims. Second, Plaintiffs were required under Rule 56(c)(1) to cite the "*particular parts* of materials in the record" supporting their positions. (Emphasis added). Instead, Plaintiffs' memorandum offers no record cites for any of Plaintiffs' factual assertions. The Court is under no duty to "sift through the record in search of evidence to support a party's opposition to summary judgment."

III. Analysis

Plaintiffs generally allege that the County deprived Thornton of adequate medical attention, subjected him to excessive force, and violated his due-process rights, all in violation of the Fourth and Fourteenth Amendments. They therefore pursue their claims against Rankin County under 42 U.S.C. § 1983, which creates a cause of action against any person who violates another's constitutional rights while acting under color of state law.

As a threshold observation, Plaintiffs' claims find a better home under the Fourteenth Amendment than the Fourth, because Thornton was a pretrial detainee when the conduct allegedly occurred. *Brothers. v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1994) ("A pretrial detainee receives the protection of the Due Process Clause of the Fourteenth Amendment."). Therefore, the Fourth Amendment claims are dismissed. And as for the due-process claim, Plaintiffs brief the issue as derivative of the medical-care and excessive-force claims. Accordingly, the Court will focus on those claims under the Fourteenth Amendment.

Municipal liability under § 1983 may not rest on *respondeat superior* and instead must be premised upon "'some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F .3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Thus "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or

---

*Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010); *see also* Fed. R. Civ. P. 56(c)(3). Nevertheless, because Plaintiffs' record evidence is only twelve pages long, the Court exercised its discretion and reviewed the material in its entirety.

3

custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).[2]

    A.    The Claims

With respect to the medical-care claim, Plaintiffs do not dispute that the County contracted with a third party to provide professional medical care at the detention center or that a healthcare professional saw Thornton on a near daily basis throughout his incarceration. Instead, Plaintiffs contend that the care Thornton received was deficient in two main ways. First, they argue that Thornton had preexisting conditions requiring prescription medication, yet the County failed to properly and timely screen Thornton or provide his normal medication. Second, they state that on the night preceding his death, Thornton was acting irregularly and exhibiting symptoms that should have prompted immediate medical attention. There is record evidence supporting these assertions on a factual basis. Whether they amount to a constitutional violation is a closer issue that the Court need not address because, as discussed later, the record lacks any evidence establishing the County's liability for these events.

The excessive-force claim is different. Thornton's mother testified that she saw him in the days before his death and noticed no bruises or lacerations, yet after his death, bruising and lacerations were noted on his face. Thornton Dep. [55-1] at 2–3. Plaintiffs also produced an

---

[2]As Rankin County observes, claims are typically classified as involving episodic acts or conditions of confinement. *See, e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). In this case, Plaintiffs never explain which theory they pursue, and they cite authority related to both. Nevertheless, their stated facts fit neatly within the episodic-act category, as does their discussion of deliberate indifference. *See generally Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). Regardless, the result would be the same under the conditions-of-confinement theory because Plaintiffs have not shown a policy or "a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Id.* (internal quotation marks omitted).

affidavit from an inmate who states that guards cussed at Thornton and at one point removed him from his cell, though this witness observed no exertion of force against Thornton and no evidence of any injuries. McLaurin Aff. [55-2] at 1–2. The only other evidence Plaintiffs offer is the report from their designated expert, Karen H. Hughes, M.D., a certified anatomic and clinical pathologist. But in her report, Hughes attributes some of Thornton's injuries to an "apparent" fall from a two foot-high bed, while she offers no explanation for the remaining contusions. Dr. Hughes Report [55-3] at 4–6.[3] From this, Plaintiffs contend that the guards used excessive force.

Analyzing a claim of excessive force "requires careful attention to the facts and circumstances of the particular case," *Graham v. Connor*, 490 U.S. 386, 396 (1989), and here no such facts or circumstances have been presented through record evidence. All we know is that Thornton had bruises after his death that his mother did not see before his death and a fellow inmate claimed that guards verbally abused Thornton. Speculative assertions fall short of what Rule 56(c) demands. *TIG Ins. Co.*, 276 F.3d at 759.

B.  The County's Liability

Even assuming both the medical-care and excessive-force claims state constitutional violations, the claims would still fail for lack of evidence linking Rankin County to these alleged deprivations. As previously noted, Plaintiffs must still show "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578.

---

[3]Rankin County has filed a separate motion to exclude these opinions.

Here, Plaintiffs do not identify a policymaker.[4] Plaintiffs' only effort to establish a causally relevant policy or custom is to claim a systemic failure to train. *See* Pls.' Resp. [51] at 5. But "[e]stablishing municipal liability for a failure to train is a difficult task." *Cardenas v. Lee Cnty., Tex.*, 569 F. App'x 252, 257 (5th Cir. 2014) (per curiam). Indeed, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

> [T]o succeed on a . . . claim arising from a municipality's failure to adopt an adequate training policy, a plaintiff must demonstrate that: (1) the [municipality's] training policy procedures were inadequate, (2) the [municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation].

*Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014) (internal quotation marks omitted).

Plaintiffs fail to meet these standards. In all, they merely assert that "[t]he defendant officers in the case at bar were not properly trained. There is a genuine issue of material fact as to whether defendants acted appropriately in response to Ronny's needs." Pls.' Resp. [51] at 5. Plaintiffs present no discussion—much less evidence—regarding the training that was provided, how that training was deficient, or how the deficient training proximately caused Thornton's death. Thus their general claim that training was insufficient fails to "focus . . . on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

---

[4]The Court would not grant summary judgment on this point because Rankin County did not raise it. *See Piotrowski*, 237 F.3d at 578–79 (noting that identifying policymaker is not "opaque" requirement but focusing on two remaining elements because defendant did not assert it). That said, the lack of an identified policymaker makes it that much more difficult to identify an infirm policy or custom.

Finally, as to the deliberate-indifference prong,

> there are two ways in which a plaintiff can establish a municipality's deliberate indifference to the need for proper training. The first and more typical approach . . . is to demonstrate that a municipality had "[n]otice of a pattern of similar violations," which were "fairly similar to what ultimately transpired" when the plaintiffs own constitutional rights were violated. The second approach . . . is the limited exception for "single-incident liability" in a "narrow range of circumstances" where a constitutional violation would result as "the highly predictable consequence" of a particular failure to train.

*Kitchen*, 759 F.3d at 484 (alteration in original) (citations omitted) (footnote omitted).

There is no pattern evidence in this case, a gap Plaintiffs apparently recognize as they argue instead that the need for better training was obvious. Pls.' Resp. [51] at 7. But as stated, single-incident liability is difficult to prove under Fifth Circuit standards. *Kitchen*, 759 F.3d at 484. And absent any argument or evidence regarding the training that was provided or why it was deficient, Plaintiffs have not shown that a different result would be "highly predicable." *Id.*; *see also Cardenas*, 569 F. App'x at 258 (holding under similar though better-developed facts that "[e]ven assuming that the training is inadequate, a constitutional violation via inadequate training was not 'so obvious' as to establish liability").

In sum, it is not enough to show that the third-party healthcare professionals and prison guards violated Thornton's constitutional rights. Plaintiffs must—under their theory—show that this tragic result was a "highly predictable consequence of a *particular* failure to train." *Kitchen*, 759 F.3d at 484 (emphasis added). Yet Plaintiffs offer no evidence regarding a particular failure to train, leaving only the conclusory allegation that training was obviously deficient. Such arguments remain insufficient to create a jury question.[5] *TIG Ins. Co.*, 276 F.3d at 759.

---

[5] Plaintiffs cite inapposite Sixth Circuit authority throughout their deliberate indifference analysis. Even if those standards tracked Fifth Circuit authority, Plaintiffs have not presented a

IV.     Conclusion

Ronny Thornton's passing is tragic. But before his estate can hold Rankin County responsible, there must be evidence creating a genuine issue for trial. On this record, the Court is compelled to find that no such record exists. All arguments have been considered, those not specifically addressed would not change the results. Indeed, other grounds for dismissal likewise exist, though it is unnecessary to explore them. Rankin County's motion for summary judgment is granted; Plaintiffs' claims are dismissed with prejudice.

A separate judgment will be entered pursuant to Rule 58.[6]

**SO ORDERED AND ADJUDGED** this the 14th day of April, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

factual case for showing that Rankin County acted with deliberate indifference.

[6] In addition to naming Rankin County as a defendant, Plaintiffs also name John Does 1–10. Since the filing of the Complaint in 2013, discovery has commenced and concluded, and Plaintiffs have not moved to amend to substitute a named defendant for a John Doe defendant. *See Clark v. McMillian*, 932 F. Supp. 789, 794 (S.D. Miss. 1996) (dismissing John Doe defendant where a plaintiff had not moved to amend the complaint following discovery). Nor have they taken any action to serve additional defendants pursuant to Federal Rule of Civil Procedure 4. *See Bernard Delcarpio No. 119047 v. Cain*, No. 13-273-SDD-RLB, 2015 WL 461544, at *1 (M.D. La. Feb. 3, 2015) (dismissing John Doe defendants under Rule 4(m) for failure to timely effect service). Accordingly, Plaintiffs' claims against the John Doe defendants are likewise dismissed.